William J. WARREN, Respondent,

v.

SIGNAL DELIVERY SERVICE, Appellant.

No. 21032.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 16, 1997.

Howard B. Becker, Thomas, Birdsong, Clayton, and Becker, P.C., Rolla, for appellant.

Jerry Kenter, Connaughton, Boyd & Kenter, Kansas City, for respondent.

CROW, Presiding Judge.

Appellant, an employer, brings this appeal from a "Final Award Allowing Compensation" under The Workers' Compensation Law[1] issued by The Labor and Industrial Relations Commission ("Commission"). The award grants Respondent, an employee of Appellant, compensation for permanent total disability.

■ The sole point relied on in Appellant's brief is:

"The ... Commission ... was wrong to uphold the award of total disability benefits because there was not sufficient, competent and substantial evidence in the record to warrant the making of the award - or- the evidence against the finding of total disability clearly overwhelms that which supports it. This Court should diminish the award because the record only supports a finding of partial disability."

Rule 84.04[2] applies to appeals arising under The Workers' Compensation Law. *Kerr*

v. *Ehinger, Inc.*, 515 S.W.2d 763, 764[1] (Mo. App.1974). Rule 84.04(d) reads:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule."

The purpose of Rule 84.04(d) and the necessity of obeying it are explained in the oft-cited case of *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978). Anyone drafting a point relied on can find guidance there.

Appellant's point relied on makes only a conclusional allegation that there was insufficient competent and substantial evidence to warrant the award. The point yields no clue as to wherein the evidence was deficient. The point likewise makes only an unadorned assertion that the evidence against the finding of total disability overwhelms the evidence supporting that finding. The point supplies no hint as to why that is so. The point also provides no inkling as to wherein or why the record supports only a finding of partial disability.

In *Porter v. Emerson Electric Co.*, 895 S.W.2d 155 (Mo.App.S.D.1995), both sides appealed from a decision of the Commission in a workers' compensation case. The two points relied on by the employer in *Porter* were:

"I. The Labor and Industrial Relations Commission erred in entering a final award awarding compensation to employee because the award was procured by the fraud of employee.

II. The Labor and Industrial Relations Commission erred in entering a final award awarding compensation to employee because such findings are not supported by substantial and competent evidence and are clearly contrary to the overwhelming

---

1. Chapter 287, RSMo 1994.

2. Rule references are to Missouri Rules of Civil Procedure (1996).

weight of the evidence on the record as a whole."

*Id.* at 160.

Applying *Thummel*, 570 S.W.2d at 684–88, and other authorities, this court held in *Porter* that neither point presented anything for review. 895 S.W.2d at 160–61.

*Stroup v. Facet Automotive Filter Co.*, 919 S.W.2d 273 (Mo.App.S.D.1996), like *Porter* and the instant case, was an appeal from a decision of the Commission in a workers' compensation case. There, as here, the issue was whether the injured employee was permanently and totally disabled. *Id.* at 275. The appellant's brief there presented three points relied on, all of which were held insufficient to present anything for review. *Id.* at 275–78.

The first point in *Stroup* proclaimed the appellant proved he was permanently and totally disabled. *Id.* at 275–76. However, as pointed out by this court, the point did not reveal wherein the evidence established that fact. *Id.* at 276. The adversary party in *Stroup,* evidently familiar with Rule 84.04(d) and *Thummel,* 570 S.W.2d at 684–88, correctly claimed that all of the points relied on were deficient. *Stroup,* 919 S.W.2d at 276. The appellant, in his reply brief, ignored the attack on his points and did not request plain error review. *Id.* at 278. This court dismissed the appeal.[3] *Id.*

■ Here, unlike *Stroup,* Respondent overlooks Appellant's violation of Rule 84.04(d). Consequently, we shall not dismiss the appeal. Instead, we shall, *ex gratia,* look to the argument following Appellant's point relied on to determine whether there is plain error justifying relief under Rule 84.13(c). *Smith v. Fabricated Metal Products,* 883 S.W.2d 537, 539[4] (Mo.App.E.D.1994). That rule authorizes an appellate court to grant relief for plain error if the error results in manifest injustice or a miscarriage of justice.

*Id. See also: Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 852 (Mo.App. S.D.1995).

■ Respondent was injured October 3, 1990, in an accident arising out of and in the course of his employment by Appellant. Respondent's deposition was taken March 31, 1993. Respondent's claim was heard October 26, 1995, by an administrative law judge ("ALJ") of the Division of Workers' Compensation.

At the hearing, Respondent presented evidence including the deposition testimony of a medical doctor. The doctor avowed Respondent "is totally and permanently disabled." Respondent also presented deposition testimony by a vocational rehabilitation expert. The expert avowed Respondent "is totally vocationally disabled."

We deduce from the nineteen pages of argument following Appellant's point relied on that its attack on the evidence is based on the premise that Respondent gave false information to the doctor and the vocational rehabilitation expert about the extent of his impairment resulting from the injury.[4] According to Appellant, the doctor and the vocational rehabilitation expert relied on the false information in arriving at their respective evaluations.

Appellant maintains Respondent's deposition confirms he gave the duo false information. Appellant cites us to segments of Respondent's deposition where he avows he is unable to stoop, crouch, or lift anything heavier than his shaving case. That testimony, says Appellant, was proven false by physical activities engaged in by Respondent during surveillance by an investigator retained by Appellant's workers' compensation insurance carrier.

The surveillance began June 28, 1995, and ended July 1, 1995. At the hearing before the ALJ, an hour-long videotape made by the

---

3. The appellant suffered the same fate—dismissal of the appeal—in *Hill v. St. John's Regional Health Center,* 911 S.W.2d 305 (Mo.App.S.D. 1995), where her pro se brief attacking a decision by the Commission in a workers' compensation case was defective because, among other things, the points relied on failed to comply with Rule 84.04(d).

4. Appellant concedes Respondent is impaired, but insists the impairment is only "20% disability of the man as a whole." That was the opinion of Appellant's main expert, the treating doctor.

investigator June 30, 1995, was received in evidence. It shows Respondent in the front yard of his residence. During the surveillance, Respondent walked, bent, squatted, carried toolboxes, picked up a "toddler" estimated by the investigator to weigh 25 pounds, and removed the "bagger" from a lawn mower (the mower was operated by a boy, not Respondent). According to the investigator, Respondent exhibited no indicia of pain in any of those activities.

Appellant proclaims:

"The surveillance is objective evidence which does not rely on the accuracy of Respondent's complaints whatsoever. It is perhaps the most important evidence in this case because it is the only accurate source of information concerning Respondent's physical abilities.... Nothing in Respondent's case compares to the pure objective value of this video because all of his evidence relies on the accuracy of Respondent's subjective complaints."

Appellant insists Respondent is employable "as a bus driver, a parking lot attendant, a salesman, a cab driver, a delivery man, a small engine repair mechanic etc." Appellant adds:

"The video shows that Respondent is not totally disabled. The surveillance, i.e., the video and report, is overwhelming evidence that Respondent is not totally disabled."

Countering Appellant's argument, Respondent reminds us his treating doctor—a neurosurgeon whose deposition testimony was presented by Appellant—restricted Respondent from "bending, twisting, or lifting greater than 25 pounds." Furthermore, the videotape, the cornerstone of Appellant's hypothesis of error, was shown to Respondent's vocational rehabilitation expert. The expert's testimony includes this:

"Q. Was there anything in the video, Doctor, that you found inconsistent with what this man told you when you examined him in your office?

A. No.

Q. Did anything in the video change any of the opinions that you have expressed today as to his employability in any labor market?

A. No.

Q. Can you tell the court why?

A. Well, basically he did the type of things, he told me that he changed positions frequently, which he did in the video. He never said that he couldn't do those activities, he just said it brought on more pain. The video didn't show if his pain was increasing or decreasing, it just showed him doing these activities. Furthermore, this is the type of person, in my opinion, that is going to push himself anyway. He is going to go beyond the physical activities that is going to increase pain."

The ALJ, in a thoughtful and comprehensive evaluation of the evidence, concluded:

"Certainly the surveillance video shows that, at least for a one-hour period, Claimant has a capacity for some physical exertion, albeit minor physical exertion...: Whether this proves Claimant to be a liar or a malingerer is probably, at best, a semantic exercise. It is undisputed that Claimant is unable to return to the type of job that he had for 35 years, that of driving trucks and loading and unloading trucks. The only dispute is as to whether Claimant can compete in the open-labor market for 'entry-level positions'. While Claimant's physical ability to perform some or all of the tasks that may be required in an entry-level position is a factor to be considered, it is not the only factor. The surveillance video would tend to indicate that Claimant has the physical ability to perform some basic tasks, at least for an hour.... While Claimant may have some minimal physical abilities, would an employer be likely to hire Claimant, over the age of sixty, with significant disabilities and no marketable skills, over other 'entry-level' applicants who are younger, and non-disabled? I think the answer is obvious. Claimant is incompetent to compete in the open labor market for 'entry-level' positions. Any residual physical abilities that Claimant has retained are meaningless in Claimant's quest to compete for entry level jobs."

The ALJ found Respondent permanently and totally disabled. The Commission, by a two-to-one vote, adopted the ALJ's award.[5]

In determining whether Appellant qualifies for plain error relief, we are mindful that:

"The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission."

*Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App.W.D.1995).[6]

It is evident from the record that the Commission considered the surveillance videotape. Nonetheless, the majority concluded Respondent was permanently and totally disabled. That was consistent with the opinion of the doctor and the vocational rehabilitation expert presented by Respondent.

Considering the whole record, we hold the Commission's award is not a manifest injustice or a miscarriage of justice. Consequently, Appellant is not entitled to plain error relief.

The Commission's award is affirmed.

MONTGOMERY, C.J., and SHRUM, J., concur.

---

**5.** Appellant's brief states: "The Commission did not adopt the opinion of the A.L.J., only the award." We do not interpret the record that way. The Commission's award provides: "The award of [the ALJ] is attached and incorporated by this reference." The ALJ's award, comprising eight pages which include the ALJ's findings of fact and rulings of law, is attached to the Commission's award. We infer the majority of the Commission adopted the ALJ's findings.

**6.** In *Davis,* the Commission reached a result contrary to that of the ALJ. 903 S.W.2d at 560. In the instant case, the majority of the Commission reached the same result as the ALJ. Consequently, we are not confronted by the issue presented in *Davis.*