**Fred W. McKEEHAN and Jerry M. McKeehan, Appellants,**

v.

**Ethel M. SIMMONS, Trustee of the Ethel M. Simmons Trust, and Ethel M. Simmons, Individually, Respondents.**

No. 20738.

Missouri Court of Appeals, Southern District, Division Two.

April 10, 1997.

Motion for Rehearing and Transfer to Supreme Court Denied April 30, 1997.

Dan K. Purdy, Osceola, for appellants.

Keith Brown, Nevada, for respondents.

CROW, Presiding Judge.

On October 11, 1994, Fred W. McKeehan and Jerry M. McKeehan ("Plaintiffs"), as tenants, entered into a "Lease Agreement" with Ethel M. Simmons ("Defendant"), as landlord.[1] The lease was for one year and covered "105.72 acres more or less."

One provision in the lease, paragraph "VIII," read:

"In the event that LANDLORD shall receive an offer for the sale of the leased property, and shall desire to sell the leased property for the amount of said offer and in accordance with the other terms and conditions of the offer, LANDLORD shall give notice to TENANT of the terms and conditions of said offer and TENANT shall then have the exclusive option for a period of sixty (60) days after receipt of such notice in which to purchase the leased property (and, if applicable, any other property included in the offer). Absent exercise of TENANT'S option, LAND-LORD shall then be free to sell the leased property and this Lease shall terminate at the earlier of its termination hereunder or the date of closing of the sale of the leased property. In consideration of this right of first refusal, TENANT shall pay, on the date of execution of this Lease, the sum of One Thousand Dollars ($1,000.00). Said sum is separate and apart from the rental payments described in Paragraph II of this Lease."

During the term of the lease, Plaintiffs filed a "Petition for Specific Performance"

---

1. The first paragraph of the lease identifies "Ethel Simmons" as landlord, but Ms. Simmons signed it: "Ethel M. Simmons TTEE." We gather from the pleadings that the parties understood this meant Ms. Simmons was signing in her capacity as Trustee of the Ethel M. Simmons Trust. The judgment makes no distinction between Ms. Simmons in her individual capacity and in her capacity as trustee; it treats her as one party, not two, and refers to her as "Defendant." No issue is raised about that in this appeal. Consequently, we refer to Ms. Simmons as "Defendant."

against Defendant, praying for a judgment compelling Defendant to sell Plaintiffs the leased property for $800 per acre. Plaintiffs alleged, *inter alia,* that on April 30, 1995, Defendant notified them that she had an offer to purchase the leased premises for that price, that Plaintiffs thereafter submitted "contracts" to Defendant for the purchase of the property, that Plaintiffs have always been ready, willing and able to fulfill the contracts, but that Defendant "refused to consummate the agreement to sell the ... 105.72 acres...."

Defendant subsequently commenced a separate suit against Plaintiffs.[2] The first count of Defendant's two-count petition was denominated "Unlawful Detainer." It pled that Plaintiffs breached the lease by using the property for purposes other than those permitted by the lease, and that Defendant was thereby entitled to immediate possession of the property. The prayer was for possession plus money damages. The second count of Defendant's petition alleged that Plaintiffs harvested crops from the property in violation of the lease. The prayer was for money damages.

The trial court consolidated the two suits for trial and tried all issues without a jury.[3] The court ruled (1) against Plaintiffs and in favor of Defendant on Plaintiffs' petition, (2) in favor of Defendant and against Plaintiffs on the first count of Defendant's petition, but awarded Defendant only possession of the property—no other relief, and (3) against Defendant and in favor of Plaintiffs on the second count of Defendant's petition.

Plaintiffs appeal. Their brief presents two points relied on, the second of which reads:

"The judgment of the trial court is against the weight of the evidence upon the whole record and could only be the result of the court having erroneously applied the law to the facts of this case."

Defendant maintains the point fails to comply with Rule 84.04(d).[4] Defendant is correct. Rule 84.04(d) reads, in pertinent part:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...."

The purpose of the rule and the necessity of obeying it are fully explained in the leading case of *Thummel v. King,* 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Plaintiff's second point yields no clue as to wherein and why the judgment is against the weight of the evidence, and provides no hint as to wherein the trial court erroneously applied the law to the facts.

A point which states a judgment is against the weight of the evidence without explaining wherein and why that is so presents nothing for appellate review. *Crowe v. Clairday,* 893 S.W.2d 400, 402[3] (Mo.App. S.D.1995). A point that states a trial court erroneously applied the law without explaining wherein the court did so presents nothing for appellate review. *Emery v. Emery,* 833 S.W.2d 453, 454–55 (Mo.App. S.D.1992).

Plaintiffs' second point is virtually identical to a point which this court held deficient in *Anderson v. Howald,* 897 S.W.2d 176, 182[10] (Mo.App. S.D.1995). Applying *Crowe, Emery* and *Anderson,* we hold Plaintiffs' second point presents nothing for review.

Plaintiffs' first point reads:

"The court erred in finding the issues in favor of Defendant and against Plaintiffs and in doing so the court ignored the law relating to the construction of ambiguous

---

2. Defendant, of course, was the plaintiff in that suit. However, hoping to prevent confusion, we shall, in this opinion, refer to Defendant as Defendant, and to Plaintiffs as Plaintiffs, irrespective of which suit we discuss.

3. Another party, a realtor, was granted leave to intervene. The realtor sought judgment against Defendant for a real estate commission, evidently on the theory that Defendant had given the real-

tor a "listing" on the property and the realtor had produced Plaintiffs as buyers. The trial court ruled against the realtor and in favor of Defendant on the realtor's claim. The realtor did not appeal, hence we say nothing else about that claim.

4. Rule references are to Missouri Rules of Civil Procedure (1996).

contracts, failed to construe the agreement against the drafter, failed to give effect to the construction placed on the contract by the parties before a controversy arose and failed to consider all of the circumstances surrounding the execution of the contract."

What we said about Plaintiffs' second point applies with equal force to their first. The initial complaint in the first point is that the trial court ignored the law relating to the construction of ambiguous contracts. Although the point does not aver the lease in this case is ambiguous, we infer Plaintiffs believe something in paragraph VIII of the lease (quoted in the second paragraph of this opinion) is ambiguous.[5] However, that inference does not cure the deficiency in the point because the point does not identify what is ambiguous in paragraph VIII, fails to reveal the legal principle the trial court should have applied, and supplies no inkling as to how the application of that principle (whatever it is) demonstrates the trial court erred in finding for Defendant.

The second complaint in the first point is that the trial court failed to construe the agreement against the drafter. Assuming, *arguendo*, that the point implies Defendant was the drafter, the point fails to set forth the construction Plaintiffs believe the trial court should have placed on the agreement, and is void of any explanation as to wherein or why the trial court erred in failing to construe the agreement that way.

The third complaint in the first point is that the trial court failed to give effect to the construction placed on the "contract" (inferably the lease agreement) by the parties before a controversy arose. The point does not disclose what that construction was, and imparts no intimation as to why it was error for the trial court to fail to give effect to it.

The final complaint in the first point is that the trial court failed to consider all of the circumstances surrounding the execution of the contract. The point identifies no circumstance the trial court allegedly failed to consider, and contains no explanation as to why it was error for the trial court to fail to consider the unidentified circumstances.

For the reasons in the four preceding paragraphs, we hold Plaintiffs' first point presents nothing for review. *Compare: State Department of Labor and Industrial Relations, Div. of Labor Standards v. Board of Public Utilities of the City of Springfield,* 910 S.W.2d 737, 746–47 (Mo.App. S.D.1995), and *Plant v. Plant,* 825 S.W.2d 674, 681–82 (Mo.App. S.D.1992).

Nonetheless, we have studied the record *ex gratia* to see whether Plaintiffs are entitled to appellate relief under Rule 84.13(c). That rule authorizes an appellate court, in its discretion, to consider unpreserved plain errors affecting substantial rights when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

■ Defendant owned four parcels of land; each was in a different section of the same township and range. There were 65.72 acres in section 5, 80 acres in section 6, 40 acres in section 7, and 40 acres in section 8. The lease covered the land in sections 5 and 8 (105.72 acres in the aggregate).

On April 29, 1995, Defendant received an offer from a third party (Ewing) to purchase the land in sections 6, 7 and 8 (aggregating 160 acres) for $800 per acre. Obviously, that offer embraced 40 acres of the land leased to Plaintiffs (the parcel in section 8), but did not embrace the other 65.72 acres leased to Plaintiffs (situated in section 5).

Defendant initially told Plaintiffs they could purchase the leased property (all 105.72 acres) for $800 per acre. However, instead of tendering the necessary sum to Defendant, Plaintiffs (through the realtor mentioned in footnote 3, *supra*) sent Defendant two contracts to sign. One pertained to the parcel in section 8; the other pertained to the parcel in section 5. The latter contract contained a condition regarding the fitness of a well. As we read the record, there was no such condition in the Ewing offer.

Defendant did not sign the tendered contracts.

5. Defendant maintains Plaintiffs did not raise the ambiguity issue in the trial court, hence they are barred from doing so on appeal. As shall appear *infra,* we need not decide that question.

Defendant's lawyer subsequently advised her that she did not have to sell Plaintiffs the leased property for $800 per acre because she had no offer from Ewing on the parcel in section 5. Defendant thereupon notified Plaintiffs they had an option to buy the 160 acres embraced by the Ewing offer on the same terms as Ewing. However, Plaintiffs never tendered to Defendant the amount necessary to buy those 160 acres at $800 per acre, nor did Plaintiffs ever tender to Defendant the sum of $84,576, the amount that would have been required to buy the leased 105.72 acres at $800 per acre (assuming, *arguendo*, that Plaintiffs had the right to buy both parcels of the leased property at that price).[6]

Given those circumstances, we find no manifest injustice or miscarriage of justice in the trial court's denial of Plaintiffs' petition.

Judgment affirmed.

PARRISH, J., and MONTGOMERY, C.J., concur.

---

**6.** Inasmuch as Plaintiffs never tendered $84,576, we express no opinion about whether they had the right to buy the land in section 5 for $800 per acre. As emphasized earlier, the Ewing offer did not embrace that parcel.