**C.W. MATHIA, Claimant–Appellant,**

v.

**CONTRACT FREIGHTERS, INC., Employer–Respondent.**

No. 20410.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 9, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 3, 1996.

---

5. Footnote 4, *supra.*

Larry J. Pitts, Ramsdell & Associates, Springfield, for claimant–appellant.

Raymond E. Whiteaker, Whiteaker & Wilson, P.C., John E. Price, Eric G. Jensen, Price, Fry & Robb, P.C., Springfield, for employer–respondent.

GARRISON, Judge.

C.W. Mathia ("Claimant") appeals from a final award of the Labor and Industrial Relations Commission ("Commission") which affirmed an award entered by the administrative law judge ("ALJ"). The award, entered in Claimant's workers' compensation claim, granted Claimant an 18% permanent partial disability to the body as a whole, but denied his claim for permanent total disability and for future medical benefits. We affirm in part and reverse in part.

Claimant is a high school graduate who previously worked as a meat cutter and maintenance worker for Hormel Packing Company. While working for Hormel, he injured his knee, resulting in two surgeries and a 25% permanent partial disability rat-

ing. Because of this injury and a broken ankle, he had difficulty working while standing on concrete floors and left that employment in March, 1983. He then returned to his family farm where he worked for a year or two while also doing some work as a mechanic. He later drove dump and asphalt trucks before becoming an over-the-road truck driver for Contract Freighters, Inc. ("CFI") in June, 1986.

On April 5, 1989, while employed by CFI, Claimant fell, striking his lower back and left side, while taking a shower in a truck terminal in Michigan. On April 12, 1989, CFI sent him to Dr. Michael Kutmas, D.O., who treated him with medication and bed rest for a "contusion left flank region/lumbar muscle area." Dr. Kutmas also referred Claimant to a urologist, Dr. Schoenfeld, and directed that he not work until further notice. On May 3, 1989, Dr. Kutmas reported that Claimant's condition was "resolving satisfactorily" and released him to return to work on May 8 with a restriction against loading trucks until May 22, when "he should be able to return to regular duties."

He continued to work until April 19, 1990, when he went back to Dr. Kutmas for what was described as "flank pain, 'severe' headache and urinary tract infection." Dr. Kutmas directed that Claimant was unable to work, and in the ensuing weeks prescribed physical therapy. He also referred Claimant to Dr. Schoenfeld again, whose diagnosis was "constant chronic prostatitis," and Dr. Toma, an orthopedist, who diagnosed a thoracic and lumbar sprain but found no evidence of a herniated disc or any condition which would require surgery. Dr. Toma also noted that Claimant's weight was 328 pounds and that he was in serious need of a "very aggressive weight loss program."[1]

In July, 1990, Dr. Toma referred Claimant to Dr. Dagen, D.O., a neurologist, who diagnosed a chronic lumbar and ligamentous sprain and muscular strain. He also made findings "indicative of nerve root dysfunction which may be inflammatory or compressive in etiology," but concluded that Claimant was not a candidate for an MRI due to his weight.[2]

At the request of CFI, Claimant was examined by Dr. Shaddock, M.D., a neurosurgeon, on August 23, 1990, who diagnosed a left sacroiliac strain (ligamentous injury); bursitis with mild sciatic neuropathy; probable renal contusion; and a possible L4–5 disc herniation. Dr. Shaddock ordered an MRI which apparently was successfully performed and which failed to reveal a herniated disc or any problem which would necessitate surgery. He indicated that he expected the symptoms to diminish to some extent over a period of time. In his deposition, which was introduced at the hearing, Dr. Shaddock said that Claimant could not sit or stand for long periods of time, but "could do some form of work as long as it didn't involve straining his back."

In October, 1990, Dr. Toma again diagnosed Claimant as having a "possible herniated disc" and "exogenous obesity," and gave an opinion that he might continue to improve with weight loss. He also rated him as having a 10% impairment of the whole person based on the lumbar spine injury. In his deposition, Dr. Toma testified that as of October 20, 1990, he believed Claimant had reached maximum medical recovery and that no additional treatment other than weight loss would help him.

On October 16, 1990, Dr. Kutmas released Claimant from his care with a final diagnosis of chronic thoracolumbar muscle strain with radiculopathy in the left lower extremity, questionable herniated disc, and obesity. He also indicated that a disability rating was warranted and noted Dr. Toma's rating of 10% permanent partial disability.

In February, 1991, Claimant's attorneys sent him to Dr. Janie Vale, M.D., an occupational medicine specialist. Dr. Vale recommended that Claimant participate in a medically supervised weight reduction program,

---

1. The record indicates that Claimant never weighed less than 300 pounds during the period covered by the evidence and at some point refused to attend a weight loss program which CFI agreed to provide to him.

2. We gather from the record that some MRI equipment would not accommodate Claimant's size.

noting that his weight (316 pounds) had contributed to difficulty in diagnosing his condition, such as the inability to obtain an MRI because of his size.[3] Her testimony indicated that weight reduction would be beneficial in obtaining accurate diagnostic studies as well as helping his symptoms. She also recommended a myelogram and CT scan, and gave her opinion that he had been unable to work as an over-the-road truck driver since "April/May of 1990," and that during that period he was "extremely limited" and probably not able to work in any other capacity. Dr. Vale also noted that Claimant had told her that he had been unable to work since shortly after his fall, but that his work as a truck driver for almost a year after that time was inconsistent with that history and would be significant in relating his back problems with the fall.

Claimant was hospitalized in November, 1991 with lower back pain, but a CT scan indicated there was no disc herniation. Dr. Shaddock diagnosed his condition at that time as a lumbar strain, mild left peroneal neuropathy, left sacroiliac strain, hypertension, and peripheral arthritis.

In June, 1992, Claimant underwent a myelogram and CT scan which was evaluated by Dr. Detwiler, M.D., a neurosurgeon. He concluded that Claimant had a multiple level bulging disc from L2–L3 to L5–S1, no evidence of nerve root swelling or compression, multi-level degenerative joint disease, and no evidence of significant stenosis of the spinal cord. He noted symptoms of back pain as well as other physical problems. While he recommended diagnostic studies, including a lumbar MRI, he opined that if the lumbar spine condition were Claimant's only problem, he would recommend continued conservative therapy, weight loss and the use of anti-inflammatory medication. He did not find any problem which would be benefited by surgery.

Claimant's attorneys also sent him to Dr. Andrew Myers, M.D., for an evaluation. Dr. Myers, an occupational and industrial medicine specialist, concluded that Claimant had

symptoms compatible with a herniated disc even in the absence of definite radiologic findings. He stated, however, that no surgeon would undertake surgery until Claimant lost at least 100 pounds, which itself could considerably ease his symptoms. Dr. Myers stated that he believed that weight loss could produce "significant" reduction in the low back pain and symptoms. He concluded that Claimant had a 60–70% permanent partial disability of the body as a whole as a result of the fall. He also recommended that Claimant avoid strenuous and/or repetitive lifting, bending or twisting motions of the low back; prolonged walking, especially on uneven ground; prolonged posturing of the low back; and strenuous and/or repetitive stair climbing. In his deposition testimony, Dr. Myers said that it would be reasonable for Claimant to lift 15 to 20 pounds repeatedly, and 25 pounds occasionally, without any harm to himself. He also said that walking, sitting or standing were not contraindicated, but that it was up to Claimant to determine his limitations in those activities.

Wilbur Swearingin, a rehabilitation counselor, interviewed Claimant on March 16, 1992. Mr. Swearingin gave his opinion that, vocationally, Claimant was totally disabled, and that in his condition at that time, he was not employable in the competitive labor market. He said that Claimant has no transferable skills but does have some potential for retraining. He also acknowledged that Claimant's 25% permanent partial disability from his prior leg injury and his obesity contributed to his vocational disability.

The ALJ, whose award was adopted by the Commission, found that Claimant had an 18% permanent partial disability and awarded benefits based on that finding, but denied his claim for future medical treatment and permanent total disability. In doing so, the ALJ found:

Based upon all of the evidence presented in this case, I find that claimant is not permanently and totally disabled as a result of his accident at work. Claimant's accident at work apparently has resulted in

3. Dr. Vale was apparently unaware that an MRI had been conducted at the request of Dr. Shaddock.

a muscle strain and perhaps in bulging disks. His other problems including significant disability to the left leg, fractured ankle and jaw, hypertension, and exogenous obesity preexisted his injury at work and have combined with his current injury to create a greater disability than either the preexisting or the current disabilities were separately. That combination of disabilities is not the employer/self-insurer's responsibility. That is the responsibility of the Second Injury Fund under 287.220 RSMo. Claimant has already settled with the Second Injury Fund. If claimant is permanently and totally disabled (a finding that I do not make), it is a result of that combination of disabilities and not a result of his current injury.

■ In his first point, Claimant contends that the Commission's award was not supported by substantial and competent evidence and that it was contrary to the overwhelming weight of the evidence. He argues that the evidence supported an award of permanent total disability and that the Commission's denial of those benefits resulted from its failure to apply the appropriate standards for making that determination. As we perceive Claimant's argument under this point, he claims that the Commission misconstrued the evidence and misapplied the law concerning permanent total disability, which resulted in the erroneous denial of such benefits.

■ The standard of review of workers' compensation cases has been described by our Supreme Court:

Under *Article V, § 18,* of the Missouri Constitution we review the decision of the Commission to see that it is supported by competent and substantial evidence on the record as a whole. In that review, we defer to the Commission on issues involving the credibility of witnesses and the weight to be given testimony, and we acknowledge that the Commission may decide a case "upon its disbelief of uncontradicted and unimpeached testimony." *Ricks v. H.K. Porter, Inc.,* 439 S.W.2d 164 (Mo.1969). Questions of law, of course, are the proper subject of our review. Section 287.495.1, RSMo 1986.

*Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993). The weight of the evidence and the credibility of witnesses are ultimately for the Commission, and we may not substitute our judgment on the evidence for that of the Commission. *Davis v. Research Medical Ctr.,* 903 S.W.2d 557, 571 (Mo.App. W.D.1995).

Claimant's contention in this point relates to the Commission's failure to award him permanent total disability benefits. Section 287.020.7, RSMo 1986, defines total disability as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident.". Claimant relies on *Story v. Southern Roofing Co.,* 875 S.W.2d 228 (Mo.App. S.D.1994), as describing the proper standard for determining permanent total disability in workers' compensation cases. There, the court said:

The Commission's final award included citations to two cases that explain the standard to be used in determining if a person is permanently and totally disabled. The first case, *Patchin v. National Super Markets, Inc.,* 738 S.W.2d 166 (Mo.App.1987), states the general test—whether the person is able to compete on the open job market. The second case, *Crum v. Sachs Elec.,* 769 S.W.2d 131 (Mo.App.1989), specifies the key question to be answered—whether an employer, in the usual course of business, would reasonably be expected to employ the person in his present physical condition. These two cases express the approved legal standard for permanent total disability.

*Id.* at 232–33.

■ Claimant argues that the Commission "did not consider [his] major non-exertional complaint from the on-the-job injury of April 5, 1989, namely chronic pain." The ALJ, however, concluded that Claimant "clearly limits his activities because of his back pain," and noted several examples of pain-related activity restrictions. Claimant's citation of several other examples from the evidence indicating the existence of back pain does not require a result different from that reached by the Commission. The ALJ's findings,

affirmed by the Commission, clearly indicate that some of the witnesses and medical evidence were found to be more credible than others. This is a function for the Commission, and this court will not substitute its judgment on issues of fact. *Id.* at 230. In fact, the resolution of conflicts in evidence by the Commission is binding on this court. *Id.*

There was a great deal of medical evidence presented on this claim. This included Dr. Toma's rating of 10% of the body as a whole with a recommendation of weight loss; Dr. Kutmas' reference to that rating with no apparent disagreement; and Dr. Shaddock's recommendation of weight loss and his opinion that Claimant could do some form of work as long as it didn't involve straining his back. We are unable to conclude that the award was without substantial and competent evidence to support it.

Claimant also argues that the award was against the overwhelming weight of the evidence. For instance, he points out that Wilbur Swearingin's testimony that he was totally disabled was not refuted by any other witness. The ALJ noted Mr. Swearingin's opinions in his findings, but also referred to the fact that his opinion was based on findings of total disability at the time of his evaluation, and did not require a finding that the disability was permanent. Our review of the record also indicates that Mr. Swearingin acknowledged that Claimant's other conditions contributed to his finding of total disability. These included his 25% permanent partial disability as a result of his previous leg injury as well as his weight problem.[4]

 A claimant bears the burden of proving all of the essential elements of the claim, including causation. *Lawrence v. Joplin R–VIII School Dist.,* 834 S.W.2d 789, 793 (Mo.App. S.D.1992). In order for CFI to be liable for permanent total disability, Claimant must prove that his accident at work, independent of other factors, caused him to be permanently and totally disabled. *Moorehead v. Lismark Distrib. Co.,* 884 S.W.2d 416, 419 (Mo.App. E.D.1994). He must not only show causation between the accident and injury, but also that a disability resulted

and the extent of such disability. *Goleman v. MCI Transporters,* 844 S.W.2d 463, 465 (Mo.App. W.D.1992).

In the instant case, the ALJ found that Claimant "is not permanently and totally disabled as a result of his accident at work." Claimant argues that the ALJ erroneously discounted the testimony of Dr. Myers and failed to "consider the impact" of Dr. Vale's testimony. The ALJ, however, discussed the testimony of both physicians in his findings. In fact, the ALJ noted that Dr. Myers rated Claimant as having a 60–70% disability to the body as a whole as a result of the accident in question. The ALJ also noted that Dr. Vale, in recommending a myelogram and CT scan, acknowledged that an MRI was the examination of choice, but stated that it was not available because of Claimant's size, apparently unaware that one had been performed several months earlier.

 As indicated earlier, the weight to be given the testimony of the various witnesses is a matter for the Commission. *Davis v. Research Medical Ctr.,* 903 S.W.2d at 571. The fact that there is evidence to support a finding of a higher degree of impairment does not require a reversal. *Lawrence v. Joplin R–VIII School Dist.,* 834 S.W.2d at 795. Instead, the Commission is to consider all the evidence and draw all reasonable inferences in arriving at a determination as to disability. *Patchin v. Nat'l Super Markets, Inc.,* 738 S.W.2d 166, 167 (Mo.App. E.D.1987). This determination is a finding of fact within the special province of the Commission. *Id.*

We are unable to conclude that the award was against the overwhelming weight of the evidence. Since it was also supported by substantial credible evidence, Claimant's first point is denied.

In his second point, Claimant contends that the Commission erred in denying his claim for future medical benefits. He argues that the overwhelming weight of the evidence required such an award, and that the Commission misapplied the law.

---

**4.** As noted by the ALJ, Claimant apparently made a claim against the Second Injury Fund which

was settled before the final hearing on his claim against CFI.

■ It is not necessary that a claimant seeking future medical benefits produce conclusive evidence to support that claim. *Sifferman v. Sears, Roebuck & Co.*, 906 S.W.2d 823, 828 (Mo.App. S.D.1995). Rather, it is sufficient to show that the need for additional medical treatment by reason of the compensable accident is a "reasonable probability." *Id.* " 'Probable' means founded on reason and experience which inclines the mind to believe but leaves room for doubt." *Id.*

■ We must bear in mind that the right to medical aid is a component of the compensation due an injured worker under § 287.140.1. *Williams v. A.B. Chance Co.*, 676 S.W.2d 1, 4 (Mo.App. W.D.1984). The statute entitles the worker to medical treatment as may reasonably be required *to cure and relieve from the effects of the injury*.[5] *Id.* (emphasis in original). This has been construed to mean treatment "which gives comfort [relieves] even though restoration to soundness [cure] is beyond avail." *Id.*

In the instant case, there was evidence from Dr. Myers that it is important for Claimant to achieve his ideal body weight, which probably will require medical intervention; that he will require physical medicine and rehabilitation assistance as well as a physical therapist; that he will require periodic, intermittent use of analgesic, anti-inflammatory and muscle relaxant medications; and that he will probably require intermittent trigger-point injections and "possibly" steroid epidural injections. Dr. Myers also testified:

> Following a course of weight loss, hopefully, when he reaches an ideal body weight, he may well require surgical intervention for his low back. I certainly would discourage any—I would not entertain nor do I think most surgeons would entertain operating on somebody who is 350 pounds plus, insofar as it carries about a 90 percent failure rate. So that, at his current weight, would not be a viable option as far as I'm concerned, and basically at present,

given his current weight, would constitute an exercise in futility and poor judgment.

> I do believe that, however, should he reach an ideal body weight, that it may be a genuine and viable consideration.

■ The fact that a claimant may have a "possible" need for future medical care does not constitute substantial evidence to support such an award. *Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5, 7 (Mo.App. E.D.1985). Dr. Myers' testimony, however, also referred to the need for other medical treatment, which could be construed as being based on reasonable probability. To this extent, there was evidence in the record which would have supported some award for future medical care. As he was entitled to do, however, the ALJ expressed doubt about Dr. Myers' evaluation and conclusion.

■ Ordinarily, as indicated earlier in this opinion, the weight and credibility of testimony and evidence are matters for the Commission. Here, however, the ALJ (and the Commission by its adoption of the ALJ's findings) misapplied the law concerning the claim for future medical treatment. In denying the claim for future medical treatment, the ALJ relied, in part, on the fact that there was no evidence that analgesic, anti-inflammatory and muscle relaxant medications had yet been prescribed; and that although there was testimony that trigger-point injections would probably be required, none had been recommended "at this time." He concluded that, "[a]s a result, I cannot find that future medical care is necessary as claimant's current medical condition exists." He also relied on the fact that Drs. Toma and Shaddock testified that Claimant had reached maximum medical improvement. The right to obtain future medical treatment should not be denied merely because it has not yet been prescribed or recommended as of the date of a workers' compensation hearing, regardless of whether there is evidence that its future need will be reasonably probable. Likewise, such future care to "relieve" should not be

---

5. Section 287.140.1, RSMo Cum.Supp.1989, in effect at the time of Claimant's injury, provided, in part:

> In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

denied simply because a claimant may have achieved maximum medical improvement, a finding not inconsistent with the need for future medical treatment. The fact that Claimant previously refused to participate in medically supervised weight reduction programs was not shown to have affected his need for the treatment which Dr. Myers indicated would probably be necessary.[6]

As in *Sifferman v. Sears, Roebuck & Co.,* 906 S.W.2d at 828, the record in this case contains evidence which, if believed by the Commission, and gauged by the correct standard of proof, would support an award for future medical benefits. Therefore, we find it necessary to reverse that portion of the award denying future medical benefits, and remand the case to the Commission for reconsideration of that issue consistent with this opinion. In all other respects, the award of the Commission is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.

---

**6.** *See Kern v. General Installation,* 740 S.W.2d 691, 693 (Mo.App. E.D.1987), where the court said: "Claimant himself refused the total knee replacement and refuses to change his lifestyle. Based upon this evidence, the Commission properly denied an award for future medical treatment."