Patrick Thomas WALSH,
Claimant–Appellant,

v.

TREASURER OF THE STATE OF MIS-
SOURI, as custodian of the Second
Injury Fund, Respondent.

No. 21573.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 15, 1997.

Larry J. Pitts, Ramsdell & Associates, Springfield, for Claimant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cara Lee Harris, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Presiding Judge.

Patrick Thomas Walsh ("Claimant") appeals from a decision of the Labor and Industrial Relations Commission (the "Commission"). Claimant, a truck driver, was injured on the job on October 2, 1991 and October 7, 1991, while employed by Contract Freighters, Inc. ("CFI"). He subsequently sought disability benefits from both CFI and the Second Injury Fund (the "Fund"). Immediately prior to the hearing before the Administrative Law Judge ("ALJ"), Claimant settled his claim with CFI, receiving compensation for 29.26% permanent partial disability to his body as a whole. The ALJ then denied his claim against the Fund, and the Commission affirmed that decision. Claimant appeals the Commission's Final Award Denying Compensation. We affirm.

Claimant was born on July 21, 1960. He served in the United States Air Force from 1980 to 1982, and was discharged when he developed hearing problems that rendered him unable to perform his duties. Although Claimant had several ear infections as a child, his hearing difficulties primarily began while he was in the Air Force, and apparently resulted from flying in planes. Eventually, he underwent experimental surgery, which apparently yielded a poor result, worsened his hearing problems, and lead to his discharge. Claimant has been prescribed hearing aids for both ears, but wore only one at the time of the hearing before the ALJ. He testified that he compensates for his hearing difficulties by keeping focal face contact and reading lips. On cross-examination by the Fund, Claimant testified that the use of hearing aids helps his hearing, and that since his military service, he has held jobs in which the ability to hear is necessary, such as in the restaurant industry. He also admitted that he had testified, in a deposition taken before he settled his claim with CFI, that his hearing problems "come and go."

In 1982, Claimant worked at Crockett's Smokehouse in Oklahoma City, Oklahoma, where he strained his back while discarding some trash. He sought treatment from a chiropractor, but was not hospitalized, and

received no disability payment for this injury. He testified that he left the job because he could no longer lift the trash, and because he was moving out of the state. He did not list this incident as a prior injury on his application for employment with CFI.

In 1987 or 1988, Claimant was injured again, while employed at Newgate Condominiums in Lakewood, Colorado. Claimant and another employee were moving a couch, when part of the couch fell on Claimant, causing a strain to his back, upper shoulders, and head. He consulted a chiropractor, and received treatment which continued for seven months, and he eventually received $8000 and his medical expenses in settlement of his workers' compensation claim arising from that injury. He testified that after the injury, he avoided work that involved bending or lifting, because he felt that the condition of his back was worsening.

On cross-examination, Claimant admitted that he was off work for only six weeks after the injury in Colorado. He also stated that he represented on his employment application with CFI that he was "released back to work 100%" after that injury; that he recovered no permanent disability benefits as a result of it; and that he was capable of heavy manual work. At the hearing, Claimant testified that he was not certain what his doctors diagnosed after the injury involving the couch, but he testified in his deposition, and stated on his CFI job application, that he had suffered only a strain and that his doctors never found anything permanent. Claimant's deposition testimony also included his statement that after the injury he regained all of his strength, had no more problems with his neck and shoulders, had no restrictions in his range of motion, and that he could do everything he did before.

After the injury in Colorado, Claimant held various jobs prior to July 1991, when he began working for CFI. He testified that ninety-nine percent of the loads he hauled for CFI were "drop and hook" loads, which required no manual loading or unloading, and that he avoided loads that did require manual loading and unloading because of the potential for back injuries.

Claimant admitted on cross-examination that he took whatever load CFI assigned to him, and that he did do some manual loading and unloading of freight. He also admitted that he took and passed the physical examination required for a commercial driver's license, and that he told the examining physician that he had no "permanent defects from illness, disease, or injury." Claimant testified that prior to his October 1991 injury, he had gone rock-climbing, water-skiing, and off-road dirt biking. He stated at his deposition that he was not having any problems with his back at the time he began working for CFI, and told vocational consultant Wilbur Swearingin that while employed there he lifted fifty to one hundred pounds at a time. Finally, Claimant admitted that, on two separate occasions, he testified under oath that he was as "strong as a horse" before his October 1991 injury.

On October 2, 1991, Claimant experienced a funny feeling in his lower back and left leg while getting out of a truck. He continued to work, although he testified that he had increasing pain in his back and leg. On October 7, 1991, Claimant experienced significantly increased pain in his back and leg while unloading boxes of paper on a manual unload trip. Claimant sought treatment for this injury and had surgery on his back in November 1991.

Claimant testified at the hearing that he has pain in his back and left leg every day, that his mobility is limited, and that his leg will occasionally give way, causing him to fall. On cross-examination, he stated that he had no pain or numbness in his back or legs before the October 1991 injury, and was not limited in his ability to sit, stand, or walk. Claimant's wife, stepson, and two of his friends testified that Claimant is apparently unable to help with housework, and that they have observed him having difficulty standing up and walking, and have occasionally seen him fall. Claimant has not worked since October 7, 1991, the date of his injury, because, he believes, he is physically unable to do so.

Dr. Michael Farrar, D.O., examined Claimant on three separate occasions after his back surgery. In his opinion, Claimant had a

5% permanent partial disability prior to his October 1991 injury, a 28% permanent partial disability as a result of that injury, and an overall disability of 43%, and was not employable. He assessed Claimant's physical abilities relevant to his employability, however, and determined that he could occasionally lift loads of twenty pounds; stand or walk for a total of two out of eight hours; sit (with normal breaks) for a total of six out of eight hours; operate hand or foot controls; occasionally stoop, kneel or crouch; reach, handle, finger, and feel without limit; but could not climb or crawl.

Claimant was also examined by Dr. Henry Freede, M.D., who expressed the opinion that Claimant had recovered fully from his injuries suffered before October, 1991, and had no disability resulting from them. He assigned Claimant a permanent partial disability rating of 25% attributable to his October, 1991 injuries.

Mike Lala, a vocational rehabilitation expert, reviewed the records concerning Claimant's case, including his medical records and the report of another vocational expert who evaluated Claimant, and testified that he believed Claimant to be employable, and did not believe that Claimant suffered from any obstacle or hindrance to his employment prior to his October, 1991 injuries. Mr. Lala based his opinion on Claimant's work history, and on Claimant's own statements about what he was able to do after each of his injuries.

Based on this and other evidence, the ALJ, whose decision the Commission adopted, found that Claimant was neither permanently and totally disabled, nor entitled to any permanent partial disability benefits from the

Fund. Specifically, he found that Claimant had no prior disabilities that would constitute a hindrance or obstacle to his employment or reemployment.

■ When this court reviews a decision of the Commission, we first examine the whole record, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the award, in order to determine if the record contains sufficient competent and substantial evidence to support the award. *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App. W.D. 1995). If there is sufficient competent and substantial evidence to support the award, we then determine if the award is against the overwhelming weight of the evidence. *Id.* In our review, we are mindful that we may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Id.* The Commission is free to disbelieve uncontradicted and unimpeached testimony. *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo.banc 1993). Its interpretation and application of the law, however, are not binding on this court and fall within our realm of independent review and correction. *Davis,* 903 S.W.2d at 571.

■ Claimant presents three points on appeal. The first relates to the testimony of Mr. Lala. Claimant contends that the ALJ, and hence the Commission, erred in allowing Mr. Lala to testify because the Fund identified him as an expert witness only two days before the hearing, and provided Claimant with a copy of his report only one day before the hearing, rather than the seven days prescribed by § 287.210.3.[1] He argues that the

1. All statutory references are to RSMo 1994. Section 287.210.3 provides:

The testimony of any physician who treated or examined the injured employee shall be admissible in evidence in any proceedings for compensation under this chapter, but only if the medical report of the physician has been made available to all parties as in this section provided. Immediately upon receipt of notice from the division or the commission setting a date for hearing of a case in which the nature and extent of an employee's disability is to be determined, the parties or their attorneys shall arrange, without charge or costs, each to the

other, for an exchange of all medical reports, including those made both by treating and examining physician or physicians, to the end that the parties may be commonly informed of all medical findings and opinions. The exchange of medical reports shall be made at least seven days before the date set for the hearing and failure of any party to comply may be grounds for asking for and receiving a continuance, upon proper showing by the party to whom the medical reports were not furnished. If any party fails or refuses to furnish the opposing party with the medical report of the examining or treating physician at least seven days before such physician's deposition or per-

statute applies not only to physicians and medical reports, but also to vocational experts and their reports, basing his argument on § 287.800, which provides that workers' compensation statutes are to be "liberally construed with a view to the public welfare." Claimant cites no case in which a Missouri court has interpreted § 287.210.3 to include vocational experts and their reports. Moreover, § 287.210.5 defines the relevant terms:

As used in this chapter the terms **"physician's report"** and **"medical report"** mean the report of any physician made on any printed form authorized by the division or the commission or any complete medical report.

The language of § 287.210.3 is clear, and in no need of construction. Claimant's argument is without merit.

Claimant next contends that the ALJ erred in allowing Mr. Lala to testify outside the scope of his report, in further violation of §§ 287.210.3 and 287.800. This argument is moot, as we have already discussed why § 287.210.3 does not apply to vocational experts.

■ Finally, Claimant argues that the ALJ's decision to allow Mr. Lala to testify deprived him of a fair hearing, because he did not have time to adequately prepare to cross-examine the witness. Again, we note that § 287.210.3 is inapplicable to Mr. Lala, and that Claimant cites no alternative case or statute in support of his argument. Furthermore, the record indicates that, when Mr. Lala was identified as a witness, the Fund informed Claimant that it was amenable to a continuance of the hearing, or to leaving the record open and deposing Mr. Lala at a later time, after Claimant had had time to prepare. Claimant rejected both of these offers, and insisted on examining Mr. Lala the day of the hearing. If Claimant was deprived of a fair hearing, it was by his own action. *See Goodwin v. Farmers Elevator & Exchange,* 933 S.W.2d 926, 928–29 (Mo.App. E.D.1996).

sonal testimony at the hearing, as in this section provided, upon the objection of the party who was not provided with the medical report, the physician shall not be permitted to testify at that hearing or by medical deposition.

Claimant's second and third points take issue with the Commission's factual findings:

## II

In the adoption of the Administrative Law Judge's decision, the Labor and Industrial Commission [sic] erred in it's [sic] denial of the Appellant's claim for permanent disability benefits against the Second Injury Fund because the Commission committed legal error in failing to apply the proper or correct legal standards per § 287.220.1 RSMo, Supp.1993 as interpreted by Missouri Appellate Courts, such that when the legally correct Second Injury Fund permanent disability standards are applied to the facts of the present claim, the Appellant was permanently totally disabled due to a combination of injuries which was the statutory responsibility of the Second Injury Fund.

## III

In the adoption of the Administrative Law Judge's decision, the Labor and Industrial Commission [sic] erred in it's [sic] denial of the Appellant's claim for permanent benefits against the Second Injury Fund in that the Commission's decision was not supported by the substantial and competent evidence as a whole or where the evidence was viewed in the light most favorable to the Commissions [sic] award, reviewing all the evidence, the Commissions Award was against the overwhelming weight of the evidence, when the correct burden of proof legal standard is applied to the ultimate facts of this claim on either standard of review.

■ Rule 84.04 [2] applies to appeals in workers' compensation cases. *Warren v. Signal Delivery Service,* 939 S.W.2d 3, 4 (Mo.App. S.D.1997). It requires the points relied on in each party's brief to "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be

**2.** All rule references are to Missouri Rules of Civil Procedure (1997).

erroneous." Rule 84.04(d). The leading case of *Thummel v. King*, 570 S.W.2d 679, 685 (Mo.banc 1978) explains the requirement:

> The dual requirements of Rule 84.04(d) that the point relied on state *wherein* and *why* the action or ruling is claimed to be erroneous are apparently the most common source of error in appellate briefing. Actually, compliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

*See also Ross v. Ross*, 888 S.W.2d 734, 736 (Mo.App. S.D.1994).

Claimant's second point alleges that the ALJ, and hence the Commission, applied the wrong legal standard to his claim, but it does not state what that erroneous standard was. Indeed, a reading of the ALJ's decision reveals that he relied on the very same statutes and cases as those Claimant cites in support of his point. Since Claimant apparently agrees with the ALJ as to what the correct legal standard is, despite his statement to the contrary, the essence of his point is that the ALJ erred because his version of the facts disagrees with that of Claimant.

Similarly deficient is Claimant's third point. It first asserts that the Commission's decision is not supported by substantial and competent evidence, but provides no hint as to wherein the evidence was so flawed. The point likewise declares that the Commission's decision is contrary to the overwhelming weight of the evidence, yet it yields no clue as to why that is so. Nor does the point supply any explanation as to wherein or why the record supports a finding of permanent disability. A point which states that a judg-ment is against the weight of the evidence without explaining wherein and why that is so presents nothing for this court to review. *McKeehan v. Simmons*, 944 S.W.2d 256, 258 (Mo.App. S.D.1997).

Claimant's failure to follow the dictates of Rule 84.04 is grounds for the dismissal of his second and third points on appeal. *Stroup v. Facet Automotive Filter Co.*, 919 S.W.2d 273, 277 (Mo.App. S.D.1996). Nonetheless, we have gratuitously studied the record for plain error, pursuant to Rule 84.13(c), which authorizes us to grant relief for plain error resulting in manifest injustice or a miscarriage of justice.

In a workers' compensation case, the claimant has the burden of proving all of the elements of his claim. *Lawrence v. Joplin R–VIII School*, 834 S.W.2d 789, 793 (Mo.App. S.D.1992). If the claimant seeks permanent total disability benefits, he must prove that he cannot compete in the open job market, and that an employer, in the usual course of business, would not reasonably be expected to hire him in his present physical condition. *Story v. Southern Roofing Co.*, 875 S.W.2d 228, 232–33 (Mo.App. S.D.1994). A claimant seeking benefits from the Fund must prove that he has a preexisting permanent disability, which is "of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed." § 287.220.1.

The gist of Claimant's argument following his second and third points is that the Commission erred in not finding him permanently and totally disabled in his claim against the Fund. He asserts that the ALJ failed to consider all of the evidence in reaching his decision and "legally erroneously discounted" evidence favorable to his case. While it is true that the Commission's decision does not mention every item of evidence in the record, Claimant cites no authority which indicates that the Commission is obliged to do so. Claimant does acknowledge that the ALJ relied on Claimant's own pre-hearing statements that he was as "strong as a horse," and suffered from no permanent defects resulting from illness, dis-

ease, or injury when he went to work for CFI; that he was "released back to work 100%" after the injury in Colorado; and that the Colorado injury was only a strain and nothing permanent. However, he dismisses these as "puffing statements," which he ascribes to the "harsh realities of obtaining employment."

Claimant similarly contends that the Commission erred in not finding him permanently and totally disabled because the ALJ found more persuasive Mr. Lala's testimony that Claimant was employable, rather than Mr. Swearingin's statement that Claimant was permanently and totally disabled. We have already noted that the credibility of witnesses is a matter within the purview of the Commission. *Davis,* 903 S.W.2d at 571. The ALJ, and hence the Commission, acted well within his bounds when he found Mr. Lala's testimony to be more credible than that of Mr. Swearingin. *Id.* The ALJ also placed much emphasis on Claimant's statements regarding his physical condition prior to October, 1991. The record indicates that Claimant's account of his past injuries and his capacity to work changed as soon as he settled his claim with CFI. The ALJ expressly stated that he did not find Claimant's post-settlement testimony at the hearing to be credible, and was certainly free to disbelieve it. *Id.*

Claimant next argues that his hearing problems entitle him to permanent disability benefits at the expense of the Fund. The ALJ specifically found that Claimant's hearing problems "did not constitute a hindrance or obstacle to his employment or reemployment." Claimant argues that the ALJ misapplied the law on this issue, because his hearing problems lead to his discharge from the Air Force. A close reading of the Commission's decision, however, reveals that the ALJ considered Claimant's discharge. The ALJ apparently found more persuasive Claimant's failure to prove the extent of his hearing loss, his ability in the past to work in jobs which require the ability to hear, and Claimant's own statement that his hearing problems "come and go." Claimant was responsible for proving every element of his claim. *Lawrence,* 834 S.W.2d at 793. He failed to do so on this issue.

Claimant makes a similar argument that his October 2, 1991 injury is separate and distinct from his October 7, 1991 injury, and should be compensated by the Fund. Again, the ALJ found that this injury did not "constitute a hindrance or obstacle to [C]laimant's employment or reemployment," in part because Claimant failed to prove the extent of the October 2 injury, as compared to that of October 7. The ALJ found that the injuries suffered on these dates were the same and that the October 7th injury was an aggravation of the injury sustained on October 2.

Claimant simply failed to prove the elements of his claim. We find no manifest injustice or miscarriage of justice in this case. The Commission's decision is affirmed.

PREWITT and CROW, JJ., concur.