**Ronnie L. WILLIAMS, Claimant–Appellant,**

v.

**CITY OF AVA, Employer–Respondent.**

No. 22201.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 30, 1998.

William W. Francis, Jr. and Jacinda A. Thudium, Springfield, for Appellant.

William F. Ringer, Evans & Dixon, Kansas City, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Ronnie L. Williams ("Employee") was employed as a sanitation engineer with the City of Ava ("Employer"). His duties included the continual lifting and moving of heavy residential and industrial trash. Employee sustained two separate injuries in the course of his employment, and he filed separate claims for workers' compensation which were later consolidated by agreement of the parties.

Employee was first injured on the job on December 3, 1992, when he was pushing a dumpster sideways and his foot slipped on some loose gravel. He felt pain in his lower back near his tail bone and was sent to Employer's physician, Dr. Mao S. Chern, who prescribed pain medication. Dr. Chern then sent Employee to an orthopedic surgeon, Dr. James Shaeffer. Two months later, on February 2, 1993, Dr. Shaeffer sent Employee back to work with no restrictions. Employee testified that he was fully able to perform his job at that time, although he had to make some minor adjustments such as being more careful with the way he lifted and moved objects and using his legs instead of his back to absorb the shock when dismounting from the truck.

On May 3, 1993, Employee was again injured on the job as he was sliding a box of industrial trash across a concrete loading dock. While he was pushing the box, "[his] back bowed backwards. There was an extreme pop that you could hear quite a ways away, and [he] went to [his] knees and it hurt extremely bad." He felt pain in his lower back (slightly higher than with the first injury) and in his right leg. Once again, Employee was sent to see Employer's physician, Dr. Chern, who again prescribed pain medication and sent Employee to Dr. Shaeffer. Employee remained under the care of Dr. Shaeffer for approximately four months. Employee's condition apparently did not improve while under the care of Dr. Shaeffer, and Employer transferred his treatment to the care of Dr. O. Gerald Orth.

Dr. Orth first saw Employee on September 20, 1993. At that time, Dr. Orth recommended that Employee undergo physical therapy and possibly take some additional non-steroidal medication. He further recommended that Employee return to full-time employment four hours a day doing light-duty work with a gradual resumption of his previous job. Thereafter, Employee returned to work subject to those restrictions and worked full-time until October 18, 1993, at which time he "just couldn't do it" any longer. He returned to see Dr. Orth on November 3, 1993. At that time, Dr. Orth opined that Employee had reached "maximum medical improvement." He again released Employee to return to work subject to the restrictions of no lifting over 20 pounds, no truck driving, and no frequent twisting or bending. Employee, however, did not return to work of any kind after this visit with Dr. Orth.

The Administrative Law Judge ("ALJ") who heard Employee's claims found, through a stipulation of the parties, that both of Employee's injuries occurred while he was employed by Employer and in the course and scope of such employment. The ALJ, how-

ever, denied Employee's claim for permanent disability with regard to the initial injury sustained on December 3, 1992. In doing so, the ALJ found that the injury was of a temporary nature which resolved without producing residual permanent disability. The ALJ also found that Employer had paid all the medical expenses and temporary disability compensation that was attributable to that injury.

With regard to the second injury, the ALJ found that Employer had provided adequate temporary disability compensation in the amount of $5,028.57, representing 25 1/7 weeks of benefits, because Employee had reached "maximum medical improvement." [1] The ALJ also found that there was "no necessity for the employer and insurer to provide additional or future medical care resulting from the accident and injury of May 3, 1993." Finally, the ALJ found that, as a consequence of the second injury, Employee sustained a permanent partial disability of 50 percent to the body as a whole, referable to his lumbar spine, and therefore, Employee was awarded the sum of $40,000.00, representing 200 weeks of permanent partial disability to the lower back. The Labor and Industrial Commission (the "Commission") reviewed and affirmed the ALJ's decision, thereby adopting the ALJ's findings of fact and award. Employee now appeals.

 In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Here, the Commission's award attached and incorporated the ALJ's award and decision. We, therefore, consider the findings and conclusions of the Commission as including the ALJ's award. *Brown v. Treasurer of the State,* 795 S.W.2d 479, 482 (Mo.App. E.D. 1990). We first examine the whole record, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the award, in order to determine if the record contains sufficient competent and substantial evidence to support the award.

*Walsh v. Treasurer of the State,* 953 S.W.2d 632, 635 (Mo.App. S.D.1997); *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App. W.D.1995). If there is sufficient competent and substantial evidence to support the award, we then determine if the award is against the overwhelming weight of the evidence. *Id.* In our review, we are mindful that we may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Id.* The Commission is free to disbelieve uncontradicted and unimpeached testimony. *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993). Its interpretation and application of the law, however, are not binding on this Court and fall within our realm of independent review and correction. *Walsh,* 953 S.W.2d at 635; *Davis,* 903 S.W.2d at 571.

On this appeal, Employee contends that the Commission erred in affirming the award of the ALJ that denied him permanent and total disability compensation because "[t]here was no substantial and competent evidence to support the finding by the Commission that the testimony of Employee was not credible or believable regarding his self-imposed limitations and subjective complaints." Specifically, Employee contends that the Commission erred in finding that Employee did not have to periodically lie down throughout the day in order to relieve his pain because this testimony was uncontradicted and unimpeached.

██ In affirming the determination that Employee was not permanently and totally disabled, the Commission incorporated the following language of the ALJ:

> The determination of whether [Employee] is permanently and totally disabled may be resolved in light of determining whether he is required to lay [sic] down every day. Notably, the vocational experts [that evaluated Employee] agree that, if [Employee] is required to lay [sic] down every day, he is not employable in the open and competitive labor market.... [Employee's] claim of permanent total disability is

---

**1.** The ALJ actually found that Employer had overpaid Employee for the period of November 3–16 because a medical doctor determined that

Employee had reached maximum improvement by November 3. Therefore, the ALJ found that Employer was entitled to a credit of $371.43.

premised on the assertion of his own subjective, self-serving complaints and self-imposed limitations ... [h]owever, I do not find [Employee's] self-imposed limitations and subjective complaints as being credible or believable, particularly in light of the treating records of Dr. Shaeffer and the medi[c]al testimony of Dr. Orth.... The two treating physicians, Drs. Shaeffer and Orth, who I find credible, declined to place specific limits or restrictions on [Employee's] ability to sit, stand, or walk, or lay [sic] down; and, they placed no restrictions on [Employee's] ability to perform sedentary or light-duty occupations.

The Commission did not find the testimony of Employee to be believable or credible, and the Commission was free to do so. "Undeniably, the [Commission], or for that matter any other fact finding administrative agency, passes upon the credibility of the witnesses and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony offered in support of the claim." *Scott v. Wheelock Bros.*, 357 Mo. 480, 209 S.W.2d 149, 151 (Mo. banc 1948). *See also Alexander*, 851 S.W.2d at 527; *Ricks v. H.K. Porter, Inc.*, 439 S.W.2d 164, 167 (Mo.1969); *Walker v. Walker*, 936 S.W.2d 244, 248 (Mo.App. S.D.1996); *Johnson v. City of Kirksville*, 855 S.W.2d 396, 398 (Mo. App. W.D.1993); *Dillon v. General Motors*, 784 S.W.2d 915, 916 (Mo.App. E.D.1990).

■ Employee argues, however, that even though the Commission may disbelieve uncontradicted testimony, it may not arbitrarily disregard or ignore undisputed or unimpeached witness testimony. In support, he cites *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57, 61 (Mo.App. E.D.1996), and *Pippin v. St. Joe Minerals Corp.*, 799 S.W.2d 898, 909 (Mo.App. S.D.1990). This Court does not find that the Commission in this case violated such principle. Foremost, the Commission specifically found that Employee's testimony was not credible. In making such a determination, the Commission necessarily considered the testimony, and did not simply "disregard" it. Secondly, while Employee testified that he had to lie down periodically throughout the day to relieve his pain, he also testified that he was still able to lift 30 pounds from the floor, pull or drag 50 pounds, and carry approximately 50 pounds once the weight was in his arms and close to his body. Furthermore, he testified that he was still able to engage in the following activities subject to some modification: care for and clean up after his dogs, hunt, fish, cook, vacuum, sweep, mop, clean the bathroom, carry laundry baskets, mow the lawn, and perform limited mechanical work on automobiles. Finally, of the numerous doctors that examined Employee, not one suggested that he should lie down throughout the day in order to relieve his pain. One doctor merely stated that lying down to relieve back complaints is appropriate for the type of injuries Employee sustained, and whether he would recommend lying down to relieve pain would depend on the patient's tolerance to pain. Notably, however, he did not recommend to Employee that he lie down throughout the day to relieve his pain. Under these circumstances, we cannot say that the Commission ignored Employee's testimony or that Employee's testimony was even undisputed.

■ In summary, this was not a situation where the Commission simply disregarded or ignored Employee's testimony; rather, it was a case where the Commission examined his testimony, and found it not believable. We do not substitute our judgment on issues of fact determined by the Commission. Employee's first point is denied.

In his final point on appeal, Employee contends that the Commission erred in affirming the award of the ALJ that denied him future medical care because the evidence established that he needed future medical treatment in order to cure and relieve him from the effects of his injury sustained on May 3, 1993.

■ The right to medical aid is a component of the compensation due an injured worker. *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo.App. S.D.1996). It is not necessary that the claimant seeking future medical benefits produce conclusive evidence to support that claim. *Id.* A worker is entitled to medical treatment as may reasonably be required to *cure and relieve from the effects of the injury.* *Id.* Such future care

to "relieve" should not be denied simply because a claimant may have achieved maximum medical improvement. *Id.* at 278.

At the hearing, Dr. Andrew Myers testified on behalf of Employee that Employee was in need of additional medical treatment to cure and relieve him of the effects of his injuries. He stated that he believed that Employee had a back problem which was going to require additional treatment, including a high probability of surgery. He also said that other studies were needed to define the precise problem involved, and that Employee would "require analgesic, anti-inflammatory and muscle relaxant medications from time to time as conditions warrant."[2]

■ The fact that a claimant may have a "possible" need for future medical care does not constitute substantial evidence to support such an award. *Mathia,* 929 S.W.2d at 277; *Modlin v. Sun Mark, Inc.,* 699 S.W.2d 5, 7 (Mo.App. E.D.1985). Testimony that can be construed as based on reasonable probability, however, will support an award for future medical care. *Mathia,* 929 S.W.2d at 277. Dr. Meyers' testimony qualifies in that category.

■ The workers' compensation law is to be liberally construed with a view to the public welfare. § 287.800, RSMo 1994. The record here contains evidence which would support an award for future medical benefits. While the reasons for denying future medical benefits for the May 3, 1993 injury are not specified in the award, we note that the ALJ found that Employee had reached maximum medical improvement. As indicated earlier, this is not a sufficient reason to deny future medical care to "relieve." *Mathia,* 929 S.W.2d at 277–78. The ALJ also found that Employee "is continuing to experience low back, right hip, and right leg pain" and "presents a medical condition requiring him to live with discomfort and occasional pain." There was no indication by the ALJ that he found Dr. Meyers' testimony concerning the need for future care or treatment to be less than credible. Accordingly, we hold that the portion of the award which denied future

medical care resulting from the May 3, 1993 injury is the result of a misapplication of the law. The award is reversed to the extent that it denies future medical benefits resulting from the May 3, 1993 injury, and the case is remanded to the Commission for reconsideration of that issue consistent with this opinion. In all other respects, the award is affirmed.

Reversed and remanded in part, and affirmed in part.

MONTGOMERY, J., and BARNEY, J., concur.

---

2. Dr. Orth, a doctor whom the Commission found "credible," also testified that Employee could take non-steroidal medication in order to relieve painful symptoms.