Roy Dale KADERLY, Jr., Claimant–
Appellant/ Cross–Respondent,

v.

RACE BROTHERS FARM SUPPLY,
Employer–Respondent/Cross–
Appellant,

and

Federated Mutual Insurance Company,
Insurer–Respondent/Cross–
Appellant.

Nos. 22253, 22273.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 26, 1999.

Rehearing Denied March 19, 1999.

Cynthia R. Black, Marshfield, for Appellant.

Kenneth T. Walter, Mann, Walter, Weathers, Walter & Bishop, L.C., Springfield, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Roy Dale Kaderly, Jr. ("Employee") was employed as a "lead man" in the supply yard of Race Brothers Farm Supply, Inc. (Race Brothers Farm Supply, Inc. and its insurer, Federated Mutual Insurance Company, are collectively referred to as "Employer"). Employee's duties included loading and unloading supplies from trucks, loading customers' vehicles with purchased merchandise, and keeping track of inventory. Employee allegedly sustained injuries in an accident that occurred in the scope and course of his employment on September 21, 1992.

On the day of the accident, Employee was helping load some equipment into a customer's vehicle. A second customer pulled up in his pickup truck wanting assistance. Employee told the second customer to turn his pickup truck around and drive to another warehouse. Employee started to walk around the second customer's truck when it lunged forward and struck him. As a result of the accident, Employee claims to suffer from back pain,

migraine headaches, and increased depression.

The Administrative Law Judge (the "ALJ") who heard the case found, among other things, that Employee sustained an accident on September 21, 1992, when he was struck by a pickup truck driven by a customer of Employer; that the accident arose out of the course and scope of his employment; that the accident caused his current back injuries and headaches as well as an increase in his depression; that the accident resulted in a 30% permanent partial disability to his body as a whole; and that there is no need for future medical treatment to cure and relieve him of the effects of his injuries. The Labor and Industrial Relations Commission (the "Commission") reviewed the award of the ALJ pursuant to section 287.480[1] and modified the award and decision with respect to the following: It found that Employee's work related accident did not cause any increased depression and thus the accident resulted in only a 25% permanent partial disability to Employee's body as a whole. The Commission approved and affirmed the award and decision of the ALJ in all other respects and attached and incorporated it to its own decision.[2] Both Employee and Employer appeal the Commission's decision. Those appeals are consolidated and discussed together in this opinion.

In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Here, the Commission's award attached and incorporated the ALJ's award and decision. We, therefore, consider the findings and conclusions of the Commission as including the ALJ's award. *Brown v. Treasurer of the State,* 795 S.W.2d 479, 482 (Mo.App. E.D.1990). We first examine the whole record, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the award, in order to determine if the record contains sufficient competent and substantial evidence to support the award. *Walsh v. Treasurer of the State,* 953 S.W.2d 632, 635 (Mo.App. S.D.1997); *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App. W.D.1995). If there is sufficient competent and substantial evidence to support the award, we then determine if the award is against the overwhelming weight of the evidence. *Id.* In our review, we are mindful that we may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Id.* The Commission is free to disbelieve uncontradicted and unimpeached testimony. *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993). Its interpretation and application of the law, however, are not binding on this Court and fall within our realm of independent review and correction. *Walsh,* 953 S.W.2d at 635; *Davis,* 903 S.W.2d at 571.

Employee first contends that the Commission erred in its finding that the accident resulted in a 25% permanent partial disability as opposed to a permanent and total disability. He argues that such a finding is not supported by substantial and competent evidence and is contrary to the overwhelming weight of the evidence because seven experts who examined Employee support an award of permanent and total disability. Employer contends in one of its two points on appeal that the Commission erred in its finding that Employee sustained a permanent partial disability of 25% because the evidence shows that he sustained a permanent partial disability of no greater than 10%. Because both of these points address the same issue, they will be discussed together.

1.  Statutory references are to RSMo 1994 unless otherwise stated.

2.  A member of the Commission filed a dissenting opinion concluding that Employee is permanently and totally disabled and entitled to receive future medical benefits.

■ As noted earlier, this Court does not substitute its own judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Walsh*, 953 S.W.2d at 635; *Davis*, 903 S.W.2d at 571. Dr. Ann Huycke of the Shealy Pain Clinic determined that Employee has a 31% permanent disability to the body as a whole and is permanently and totally disabled *with respect to being able to return to any employment.* Two other treating physicians at that clinic concurred with this conclusion. Dr. Jeffery Woodward, also a treating physician, determined that Employee showed only signs of nonorganic symptoms or "exaggerated symptoms," had reached maximum medical improvement, had no permanent impairment from the injury sustained on September 21, 1992, and should be released to full-time regular work with no restrictions. Those findings of Dr. Woodward were made in 1993. He was asked to reevaluate Employee in 1996. At that time, he gave Employee a permanent partial disability rating of 10% to the body as a whole, stating:

> At the time of my first release of the patient in 1993, I firmly expected the patient to make gradual progress and gradual return to work and nonwork activities physically, and I expected his pain complaints to improve. After review of the patient in 1996, he continued to have significant pain complaints, and the [10%] impairment was provided for those chronic pain complaints.

The above evidence clearly supports an award of 25% permanent partial disability. Accordingly, we find no error in the Commission's finding, and both Employee and Employer's points with regard to the finding of 25% permanent partial disability are denied.

■ In his second point on this appeal, Employee contends that the Commission erred in finding that the accident on September 21, 1992, did not result in any increase to his already existing depression. It seems to be undisputed that Employee suffered from some type of depression prior to the accident and that he now suffers from chronic depression. The issue is whether the chronic depression is a result of the September 21, 1992, accident.

Dr. Harold A. Bauer, a general practitioner, testified by way of deposition that he saw Employee on September 7, 1990. At that time, Employee seemed to be suffering from reactional or situational depression due to a recent divorce. He again saw Employee on January 3, 1992. At that time, Employee complained of what Dr. Bauer referred to as occult or "not very obvious" depression. Specifically, Employee complained of insomnia, motivational problems, stress, and headaches. Employee told Dr. Bauer that he had tried to take Desyrel, an anti-depressant, before, but he did not tolerate the side-effects very well, so he discontinued its use. He also told Dr. Bauer that he had previously taken Prozac, another anti-depressant, for a period of three months and it had worked quite well. Dr. Bauer prescribed a one month supply of Prozac along with Doral, a drug to help Employee sleep. On March 12, 1992, Dr. Bauer prescribed a two-month supply of a drug called Xanax after talking with Employee by telephone. Dr. Bauer was unsure from his records why he prescribed Xanax, but testified that it could have been related to the stress headaches. He also prescribed additional medication to help Employee sleep. Employee telephoned Dr. Bauer again on April 7, 1992, at which time Dr. Bauer decided to continue Employee on Prozac for another two months and discontinue its use if Employee did not respond. On September 1, 1992, Employee saw Dr. Bauer and complained of insomnia during the prior two-week period. Dr. Bauer diagnosed Employee with a "depressive type of insomnia" and prescribed both Halcion and Xanax to help him sleep.

The deposition of Dr. C. Kevin Watt, an osteopathic family practitioner, indicates that he first saw Employee on January 4, 1991. At that time, Employee had some

problems with "crying spells, difficulty sleeping, stress, father had recently died and recently divorced and had weight loss." Dr. Watt diagnosed Employee with situational depression and prescribed Desyrel. Dr. Watt saw Employee again on May 29, 1991, and his records indicate, "[Employee] ... complains of dreams with Desyrel, depression, not as much—— not as much as a problem. Still having increasing stress. Still not sleeping well. Has remarried wife and has decreased the stress." Dr. Watt did not continue Employee on Desyrel at that time. Dr. Watt again saw Employee on July 30, 1991. At that time, Employee's wife said that she had noticed changes in Employee without the Desyrel and Dr. Watt prescribed Prozac for approximately three months.

Dr. Thomas A. Blansett, a psychologist, testified by deposition that he saw Employee at the request of Employer on April 5, 1996, and April 12, 1996, "to evaluate [Employee's] personality, pain complaints, review his medical history and information, [and] offer some conclusions and possible recommendations for treatment." His original report dated May 5, 1996, diagnosed Employee as suffering from a "depressive disorder, not otherwise specified." Subsequent to that report dated May 5, however, Employer sent Dr. Blansett the medical records of Dr. Watt and Dr. Bauer. Dr. Blansett testified that those records caused him to change his conclusions stated in the report dated May 5. He stated:

> The major change that I made in my second report was that, as opposed to diagnosing [Employee] as suffering from a depressive disorder not otherwise specified, I diagnosed him with a dysthymic disorder, which is a more longer term depressive disorder.

He further testified that he believed the disorder existed prior to the reported injury of September 21, 1992, stating:

I think that there's probably pretty good evidence to suggest that there was some depression before this accident and that [Employee] was treated for that with a variety of medications. Being treated with a variety of medications may suggest that, you know, his depression was somewhat difficult to treat or abate. And I think that there's probably good evidence when you take into consideration some of the psychosocial history, such as his alcohol abuse, some of the things that he experienced as – you know, as a young man also into consideration, that that most likely predated this accident.

At trial, both Employee and his wife testified that Employee was not having any problems with depression directly prior to the accident. Employee testified that he had not had problems with depression since May 1991, and his wife testified that, with regard to their marriage and his mental health, "Things were going so much better than they had ever gone in the previous years." [3]

Although the evidence regarding the status of Employee's mental health prior to the accident is somewhat conflicting, we cannot say that there is no substantial evidence upon which the Commission could base a finding that Employee's depression was not increased due to the accident. Nor can we say that such a finding by the Commission is against the overwhelming weight of the evidence. While it is true that Drs. Bauer and Watt seem to support a diagnosis of merely "situational" depression prior to the accident, Dr. Blansett supports a diagnosis of dysthymic depression. Even though the evidence shows that Employee had the proper triggers for situational depression (i.e., the loss of a loved one, divorce, etc.), he was treated for such "situational" depression for well over a year. In fact, Employee was given a two-month prescription for Prozac on April

---

**3.** The medical records indicate, however, that Employee was being treated for depression as late as April 1992.

7, 1992, approximately five months prior to the accident. Furthermore, Drs. Watt and Blansett both testified that it is very possible that situational depression (often short-lived depression) can manifest itself into more of a chronic, long-term depression. Under the circumstances, the Commission was free to disbelieve and discount the diagnoses of Drs. Bauer and Watt and believe that of Dr. Blansett. The evidence does not overwhelmingly mandate a finding that Employee's depression was any more severe because of the accident occurring on September 21, 1992. Employee's point is denied.

In his final point on appeal, Employee contends that the Commission erred in denying him future medical benefits because such denial "is not in accordance with the law in that the correct standard is claimant must show by reasonable probability there is a need for future medical treatment and claimant established reasonable probability by expert testimony."

■ The right to medical aid is a component of the compensation due an injured worker. *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo. App. S.D.1996). It is not necessary that the claimant seeking future medical benefits produce conclusive evidence to support that claim. *Id.*A worker is entitled to medical treatment as may reasonably be required to *cure and relieve from the effects of the injury. Id.*Such future care to "relieve" should not be denied simply because a claimant may have achieved maximum medical improvement. *Id.* at 278.

■ The fact that a claimant may have a "possible" need for future medical care does not constitute substantial evidence to support such an award. *Mathia*, 929 S.W.2d at 277; *Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5, 7 (Mo.App. E.D.1985). Testimony that can be construed as based on reasonable probability, however, will support an award for future medical care. *Mathia*, 929 S.W.2d at 277.

In this case, the Commission adopted the following language of the ALJ:

> [Employee] has continued to receive pain treatment from the Shealy Pain Clinic for several years and has shown no long-term improvement. Although the doctors who have treated [Employee] at Shealy Pain Clinic believe that [Employee] is in need of continuing this medical treatment, it does not appear that it will be any more successful in the future than it has in the past. Dr. Campbell testified that the treatment he has received has been effective for a few days at a time but that [Employee] has not shown any long-term improvement and she does not expect him to in the future. Therefore, I find that the evidence is not sufficient to find that [Employee] is in need of future medical treatment to cure and relieve him of the effects of his injury because the evidence is clear that the treatment in question has not been effective in doing so in the past.

■ The workers' compensation law is to be liberally construed with a view to the public welfare. § 287.800. The record here indicates that Employee continues to experience pain as a result of the injury. The Commission's finding is the equivalent of a denial of future medical treatment because previous pain treatment has not been successful. As previously mentioned, future medical treatment to "relieve" should not be denied simply because a claimant may have achieved maximum medical improvement. *Mathia*, 929 S.W.2d at 277. *See also Williams v. City of Ava*, 982 S.W.2d 307 (Mo.App.S.D.1998). Accordingly, we hold that the portion of the award which denies future medical care resulting from the September 21, 1992, injury is the result of a misapplication of the law. The award is reversed to the extent that it denies future medical benefits resulting from the September 21, 1992, injury, and the case is remanded to the Commission for reconsideration of that issue consistent with this opinion.

Employer contends in its second and only other point on appeal that the Commission erred in finding that Employee sustained an accident arising out of and within the course and scope of his employment because Employee's "testimony was inherently improbable or so inconsistent or contradictory as not to be credible." Employer argues:

> The weight [of evidence] depends on its effect in inducing belief. Certainly [Employee] was not believable, so the balance of the evidence pointing to no accident at work becomes overwhelming.

Once again, we do not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Walsh,* 953 S.W.2d at 635; *Davis,* 903 S.W.2d at 571. The Commission is free to believe all, part, or none of the evidence presented at trial. At trial, Employee testified to the following events occurring while he was at work for Employer on September 21, 1992:

> As soon as I went to walk in front of [the customer's] truck, [the customer] was looking out his back window, so I assumed he was going to back up. I went to walk in front of [the customer's] truck and [the customer] – when [the customer] gassed it, the truck lunged towards me. Just in that very second I hit his truck and hollered and at the same time basically it hit me. It hit me on my knee and my ribs is what first hurt, kind of spun me into the vehicle, bent me over it, and it lunged me backwards a few steps.

Another witness who was standing near Employee at the time of the alleged accident, Mr. Larry McNerney, offered testimony that seemed to corroborate Employee's story. He testified:

> Well, best I can remember we [he and Employee] was [sic] talking there and I think I had turned to start to get in my truck and he had went after a forklift, I believe and, ah, just shortly after we turned, why I heard him slap the hood of another truck and I turned around

and the idea stuck in my mind that it would make me mad if someone slapped my hood as hard as what he did....

This evidence, if believed, constitutes substantial evidence that could support a finding that the alleged accident did, indeed, occur, and it occurred during the course and scope of Employee's employment with Employer. This finding is not against the overwhelming weight of the evidence, and the Commission did not err in reaching such conclusion. Employer's point is denied.

The award is reversed to the extent that it denies future medical benefits resulting from the September 21, 1992, injury, and the case is remanded to the Commission for reconsideration of that issue consistent with this opinion. In all other respects, the award is affirmed.

MONTGOMERY, J., and BARNEY, J., concur.